LANDRIEU, Judge.
Ronald Alexander appeals the judgment rendered against him awarding plaintiff Brenda Foster a total of $10,760 in damages.
This lawsuit arises out of a five car chain collision which occurred at the intersection of Tehoupitoulas and Poydras Streets in the early morning hours of February 4, 1989, as revelers were leaving a Mardi Gras ball. The plaintiff, Brenda Foster, driving a Crescent City taxicab, stopped behind another vehicle in response to a red traffic light and was struck from behind and pushed into the rear of the vehicle in front of her driven by Benny G. Harris. The chain began when a vehicle owned by Sharon a/k/a Rona Varnado struck the rear of a vehicle owned by Leora Porter and driven by Dorothy Bailey. The Porter vehicle struck a vehicle owned and operated by Steven O’Connor and the O’Con-nor vehicle struck the rear of the taxicab driven by Brenda Foster, which in turn, struck the Harris vehicle.
Ms. Foster filed suit for soft-tissue injuries suffered as a result of the accident. Named defendants were Rona Varnado as owner of the first vehicle, State Farm Insurance Company (Ms. Varnado’s liability insurance carrier), and Ronald Alexander as driver of the Varnado vehicle. Also named as defendants were Ms. Bailey, Leora Porter, and Allstate Insurance Company (the liability insurance carrier of the Porter vehicle), as well as Steven O’Connor.
The proceedings of this case become irregular at this point. Ronald Alexander was never served with the original petition. Counsel for State Farm, however, after service of the original petition on State Farm through the Secretary of State, answered on behalf of State Farm and Ronald Alexander, but not Sharon Varnado.
Allstate answered on behalf of Porter and Bailey and cross-claimed against Ms. Varna-do, Mr. Alexander, and State Farm. The record does not indicate, however, that Ronald Alexander, Sharon Varnado, or State Farm were ever served with Allstate’s cross-claim; nor is there an answer to the cross-claim on behalf of State Farm, Varnado, or Alexander. In any event, on the morning of trial, counsels for plaintiff, State Farm, and Allstate stipulated that State Farm Automobile Insurance Company, the liability carrier of the Varnado vehicle, had exhausted its policy limits in payments to various claimants involved in the accident and should be dismissed as a party defendant.
Prior to the trial, Mr. Alexander was never deposed or served personally with the petition or cross-claim. The record indicates that although Allstate attempted to subpoena him personally for trial, that service was not returned and he was only served through counsel for State Farm. Further, on the morning of trial, State Farm moved to dismiss its named insured, Ms. Varnado, as a defendant asserting that “she was simply the owner of the vehicle that Mr. Alexander was driving at the time of the accident.”[1] This assertion, when viewed in the context of the evidence which emerged at trial, indicates that counsel for State Farm, although representing Alexander at trial, had not discussed the case with Alexander.
During the course of another defendant’s testimony, Ms. Bailey, it emerged that Michael Varnado rather than Ronald Alexander was the driver of the Varnado vehicle at the time of the accident. Ms. Bailey testified that there were two men in the Varnado vehicle when it rear-ended her vehicle and that, immediately after the accident, she sought the name of the driver of the vehicle. Ms. Bailey stated that Michael Varnado identified himself as the driver and that she *1321 wrote the pertinent information down on a slip of paper. Ms. Bailey then produced a slip of paper[2] containing the name, address, and phone number of Michael Varnado, as well as the license number 903B973. Ms. Bailey further testified that Mr. Varnado indicated that he had insurance with “Home Mutual, or some other kind of insurance.”
Ronald Alexander, called to testify by plaintiffs counsel, stated that he was not the driver of the Varnado vehicle. Mr. Alexander, who lives at 8541 Chase Street[3] had attended the Zulu Mardi Gras Ball with his neighbor Michael Varnado.[4] Alexander testified that upon leaving the ball, he was a passenger in the Varnado vehicle driven by Michael Varnado when the accident occurred in the midst of bumper-to-bumper traffic. Alexander denied telling Officer Frischhertz that he was the driver of the Varnado vehicle, but stated that he received the traffic ticket for the accident because “[m]y license was the only license that was able to be presented to the officer at the time.” Alexander further testified that he had not discussed the ease with anyone.[5]
Eugene Frischhertz, the accident investigation officer, testified that he arrived four hours after the accident and had no personal knowledge of who was driving the Varnado vehicle, but that, based upon his investigative report, Ronald Alexander was the driver of the Varnado vehicle and Michael Varnado was a passenger. Officer Frischhertz testified further that Ms. Foster told him that she suffered no injuries in the accident.
In her testimony, Ms. Foster admitted telling the police officer that she was uninjured, but claimed that on the day of the accident she sought medical treatment at Touro Infirmary. However, no Touro Infirmary medical records or reports were introduced. Upon being questioned as to whether she sought additional medical treatment, Ms. Foster testified that she contacted a lawyer and upon his referral, she was treated by Dr. Joseph E. Guenther for three months and had two appointments with Dr. Leslie R. Hightower.[6] Ms. Foster testified that she changed lawyers and upon referral of her trial attorney (and apparently in preparation for trial), she was examined by Dr. Kenneth N. Adatto in October of 1990. Ms. Foster testified further that she was involved in a second rear-end collision in October of 1989 and that as a result of that accident and upon referral by another attorney, she was given “heat treatments for the neck and back” by a doctor whose name she could not recall. She further testified that she could not recall whether she had told Dr. Adatto of this second and intervening accident.
As to her loss of wages claim, Ms. Foster testified that her decision to not work for three months after the accident was personal and not based on medical advice. Ms. Foster claimed that, as a taxicab driver, she earned $1600 per month, but admitted that she had not filed tax returns in 1989 and 1990 and had no documentation to verify her allegations of lost income.
The only medical testimony presented at trial was by Dr. Adatto who testified that he initially saw Ms. Foster on October 16, 1990 (nineteen months after the February 4,1989, accident); she told him of the February accident and injuries to her back and neck, but made no mention of the October accident. She told him she had been treated by Dr. Hightower for the last five months and by a Dr. Guenther. Based solely on the history *1322 related by Ms. Foster, Dr. Adatto diagnosed neck and back strain and related her symptoms to the February 1989 accident. Dr. Adatto admitted, however, that this diagnosis depended totally on the accuracy of the history given by Ms. Foster. He stated that Ms. Foster did not tell him she was involved in an accident on October 30, 1989 and that, if in fact Ms. Foster injured her neck and back in the October 1989 accident, he could not say with any reasonable degree of medical certainty that the symptoms presented to him in October 1990 were related to the accident of February 4, 1989.
The trial court entered a judgment against Ronald Alexander only, dismissing State Farm, Allstate, and Ms. Bailey as defendants and awarded Ms. Foster $7500 in general damages, $760 in medical specials, $2,500 in lost wages. In its reasons for judgment, the trial court found that “Ronald Alexander was the driver of the vehicle that caused the chain of events which resulted in the plaintiff’s vehicle being rear-ended.”
State Farm counsel, representing Alexander, moved for a new trial based on the newly discovered evidence that Michael Var-nado was the driver of the Varnado vehicle at the time of the accident. In supporting memorandum, counsel stated that he had only discovered this information during the course of the trial and moved for a new trial to allow Michael Varnado to confirm the testimony of Mr. Alexander and Ms. Bailey.[7] The motion was denied.
Ronald Alexander now appeals the judgment rendered against him. He contends that, in light of his and Ms. Bailey’s testimony, the trial court erred in finding that he was the driver of the vehicle and, further, he contests the awards made for general damages, loss of wages, and payment of Dr. Adatto’s witness fee.
In accordance with Canter v. Koehring Company, 283 So.2d 716, 724 (La.1973), we have reviewed the evidence before the trial court and do not find that a reasonable factual basis exists for the finding upon which the trial court based its judgment against Ronald Alexander. The only evidence supporting the trial court’s finding is the investigating officer’s report that Alexander was the driver; however, the officer admitted he arrived four hours after the accident, had no personal recall of the investigation, and had no personal knowledge of the identity of the driver of the Varnado vehicle.
On the other hand, the evidence supporting Alexander’s assertion that he was not the driver is quite weighty. He testified under oath that he was not the driver. Ms. Bailey, an independent witness with no apparent reason to fabricate evidence, testified that a person claiming to be Michael Varnado identified himself as the driver of the vehicle immediately after the accident and she produced the scrap of paper upon which she had written the pertinent information. In addition, it is far more likely that Sharon Varna-do entrusted her vehicle to her relative with whom she lived rather than to Alexander, her neighbor. We also note that counsel" representing Alexander at trial apparently had never discussed the facts of the case with Alexander and was, thus, surprised to learn that the testimony would reveal that Alexander was not the driver. Further, it appears from the record that prior to trial Alexander was never personally apprised of the lawsuit pending against him, that counsel for State Farm who had never discussed the case with him answered on his behalf and accepted service of a subpoena for him.
We find that the trial court was clearly wrong in finding that Alexander was the driver of the Varnado vehicle and reverse the judgment of the trial court. Each party shall bear its own costs.
REVERSED.
WALTZER, Judge, concurs.

. The motion was taken under advisement by the trial court. The record does not indicate that the motion was ever ruled upon or that Ms. Varnado was, in fact, dismissed as a defendant. Ms. Var-nado's status as a defendant in this case is problematic because as previously noted, no answer was filed by her or on her behalf.

. The slip of paper produced by Ms. Bailey was not entered into evidence and is not contained in the record.

. Mr. Alexander testified that he had lived on Chase Street for 3 years, but that the address listed on his driver's license at the time of the accident, 4802 Allen Street, was his mother's residence.

. The record indicates only that Sharon Varnado and Michael Varnado reside at 8533 Chase Street, the nature of their relationship is unclear.

. The record supports this statement. Apparently State Farm’s counsel never discussed the case with Alexander and learned in the midst of trial that he was not the driver.

. We note that a report from Dr. Guenther and bills from Drs. Guenther and Hightower were admitted into evidence, but that in its reasons for judgment the trial court stated because no medical testimony was offered relating the medical treatment to the accident, no award was made for payment of the bills.

. It was further noted that Ms. Bailey "had no economic interest in the outcome of the trial and was a total and independent witness.”